UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FEDERAL INSURANCE COMPANY

     Plaintiff

v.

TIMOTHY OLAWUNI, et. al.

     Defendant.

Case NO. 1:06CV00157
Judge Paul L. Friedman

MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO VACATE ENTRY OF DEFAULT

The plaintiff, by its undersigned counsel, submits the following Memorandum in response to the defendants' Motion to Vacate Entry of Default.

The plaintiff's Complaint in this action was filed on January 30, 2006. (Docket Rep., attached as Ex. 1.) Defendant Olawuni/Adeyemi and his wife Ms. Olajide were personally served on February 13, 2006 at their residence by a process server. (Kenerson Aff. re: Olajide, attached as Ex. 6; Kenerson Aff. re: Olawuni, attached as Ex. 7.) The Clerk entered a Default against the defendants on April 10, 2006 after they failed to file a timely answer. (Id.)[1]

The defendants have asked the Court to vacate the Default because they claim that their failure to file an Answer was not willful, that they can present a meritorious defense, and that the delayed resolution of this action will not prejudice the plaintiff. (Defs.' Mem. of P. & A. in Supp. of Mot. to Vacate Entry of Default at ¶¶ 5-7, attached as Ex. 2.) For the reasons that follow, the plaintiff respectfully requests that the Court deny the defendants' request to vacate the Default.

---

[1] The plaintiff has not yet taken judgment in this action because the insurance adjustment has not yet been completed. It is anticipated that the final payments will be made within the next two months.

I.      FACTS

The defendants purchased the house at 1427 5th St., NW, Washington, D.C. as an

investment, with the intention of converting the dwelling into multiple condominium

units that could be sold for profit.  The plaintiff's investigation revealed that, in order to

maximize their profits, the defendants intended to secretly excavate a new basement that

could be sold as a fourth condominium, for additional profit.  (Pl.'s Structural

Investigation Report, attached as Ex. 3; Chance Aff. at ¶¶ 14-15, attached as Ex. 4.)

While the defendants disclosed their true motives to neighbors, they used an entirely

different story on their application to obtain a work permit.  (Ex. 4 at ¶¶ 10-14.)  The

fraudulent application stated that the purpose of the permit was to repair a common wall

through the basement, when in fact no basement even existed.  (Id.; Pl.'s Photographs,

attached as Ex. 5.)  To further their plan, the defendants submitted patently fraudulent

construction drawings with their application that falsely showed the existence of a

basement.  (Ex. 4 at ¶¶ 10-14.)  This was done to dupe the building department officials

into issuing a work permit, and to enable the defendants to create a valuable fourth floor

of living space.  (Id. at ¶¶ 14-15.)

Defendant Olawuni has a history of fraudulent conduct.  Defendant Olawuni has

an alias identity, known as Timothy Adeyemi.  (Id. at ¶ 5.)  This alias has a

corresponding Social Security Number that was issued by the United States federal

government.  (Id.)  In order to have obtained an alias identity and Social Security

Number, Defendant Olawuni must have made factual misrepresentations about his

identity to the federal government.  These misrepresentations, and Defendant Olawuni's

possession of two distinct Social Security Numbers, are federal crimes.  Defendant

Olawuni/Adeyemi's trend of dishonesty continued in this case when he applied for the aforementioned work permit using both his real name and his alias identity.  (Id. at ¶ 10.) The permit lists Defendant Olawuni as the owner of the property and Timothy Adeyemi as the project contractor.  (Id.)

The defendants are dishonest people who, in addition to obtaining a work order on deceptive grounds, violated the law by continuing to excavate beneath the first floor after the city issued an order to stop work on February 17, 2005.  Eventually, reckless excavation and a lack of engineering expertise caused inadequate support to the common wall, resulting in its failure and the collapse of Denise Washington's home.  (Ex. 3.)

II.    **ARGUMENT**

Federal Rule of Civil Procedure 55(c) allows a Default to be set aside "[f]or good cause shown."  Because the Rules do not define "good cause," courts consider the same factors that they would use to evaluate a motion to vacate a Default Judgment.  O'Connor v. Nevada, 27 F.3d 357, 364 (9th Cir. 1994).  Therefore, when determining whether to set aside a Default, a "district court should consider whether: (1) the plaintiff would be prejudiced by setting aside the default; (2) the defendant has a meritorious defense; and, (3) the defendant's culpable conduct led to the default."  Id. (citing Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)).

The defendants' request to vacate the Default should be denied because they demonstrated bad faith in this case, the defendants do not have a meritorious defense, and lifting the Default would be prejudicial to the plaintiff.

### A.    The defendants acted in bad faith in causing the Default.

The defendants have shown a propensity for deceit that establishes their bad faith in causing the Default.  Their deceit even manifests itself in the pleadings filed with the Court, where the defendants claim that they failed to file a timely Answer because, as their counsel states, "they were never served with process in this matter."  (Ex. 2 at ¶ 5.) However, process server Lorenzo Kenerson swears in his affidavits that he personally served both defendants on February 13, 2006 at approximately 9:40 pm.  (Ex. 6; Ex. 7.) Kenerson tracked the defendants to multiple locations and performed skip traces until he found the defendants at 711 Seek Lane, Takoma Park, Maryland.  (Ex. 6 at ¶ 6; Ex. 7 at ¶ 7.)  Defendant Florence Olajide was described as "a Black female, black hair, brown eyes, approximately 5'8" tall, 185 pounds, and 45 years of age."  (Ex. 6 at ¶ 6.) Defendant Timothy Olawuni was described as a "Black male, black hair, brown eyes, approximately 5'9" tall, 225+ pounds, and 46 years of age."  (Ex. 7 at ¶ 7.)  Both defendants confirmed their identities to Kenerson.  (Ex. 6 at ¶ 6; Ex. 7 at ¶ 7.)  Shortly after serving process, Kenerson heard Defendant Olawuni say, "What is this sh##?" and Defendant Olajide told Kenerson that she would "explain it to [Olawuni]."  (Ex. 6 at ¶ 8; Ex. 7 at ¶ 8.)

Despite these events, Defendant Olawuni swears in his affidavit that he does not "*recall* receiving the Complaint and Summons from the Plaintiff."  (Olawuni Aff. at ¶ 5 (emphasis added), attached as Ex. 8.)  However, Defendant Olawuni's inability to "recall" service does not mean that he was not served, and merely indicates that Defendant Olawuni may have consciously stopped short of denying service in order to avoid perjuring himself.  Given the defendant's history of deception, his clever language

4

suggests that either he is deviously hindering the progression of this case, or that he has been served with so many legal complaints that he cannot recall one from the other.

Similarly, Defendant Olajide claims in her affidavit that she "was never served." (Olajide Aff. at ¶ 5, attached as Ex. 9.)  Curiously, she does not state that she was never "handed" the Complaint and Summons by the process server.  The term "served" has a legal meaning.  A person can receive a complaint from a process server, yet not be legally served due to other technical problems.  In such a case, the defendant can truthfully claim that she was not "served," even though she received a copy of the complaint.  Given the defendants' history of conduct, it seems apparent that Ms. Olajide had a specific reason for stating in her affidavit that she was not "served."  The Court must remember that process server Lorenzo Kenerson specifically states in his affidavit that Ms. Olajide acknowledged her identity when he served her with the complaint.  (Ex. 6 at ¶ 6.)

## B.     The defendants do not have a meritorious defense.

The court should also deny the defendants' Motion to Vacate Entry of Default because the defendants are without a meritorious defense.  First, the defendants claim that they maintained liability insurance coverage that will indemnify the plaintiff in this case. (Ex. 2 at ¶¶ 7-8.)  However, no such policy obtained by the defendants has indemnified the plaintiff for any damage caused by the defendants' reckless conduct.  Indeed, the plaintiff received a call from Greg Kastendike, a representative of the defendants' insurance carrier, who stated that the defendants had not even notified him of the plaintiff's claim.  He went on to state that he had tried to get information about the incident from the defendants and their apparently former attorney, Mark Muyiwa Sobo, but they were uncooperative.  In fact, Mr. Kastendike said that the construction insurance

5

policy issued by John's Eastern Company specifically excludes claims for damages resulting from the movement of earth. Since this loss resulted from the movement of earth, the defendants are uninsured for this loss.

Next, the defenses listed in the defendants' answer clearly have no applicability to this case, further evidencing their lack of meritorious defense. For instance, the defendants raise the statute of limitations defense even though the complaint was filed within five months of the collapse. Second, the defendants claim that Denise Washington "assumed the risk" of damage to her house. She was simply a next door neighbor who saw work being done to the adjacent house with a permit in the window. How was she to know that the permit was fraudulently obtained? The answer also raises the statute of *frauds* defense. This a defense that is only applicable in contract actions. There was never any contract between the defendants and Ms. Washington.

In short, the defendants' proposed answer does not set forth any unique, fact-specific defenses that would suggest they have a meritorious defense in this case. On the contrary, the fact that they obtained a fraudulent work permit to excavate a brand new basement without any engineering plans proves just the opposite: there is no meritorious defense to their conduct in this case.

### C.    Further delay will cause great prejudice to the plaintiff.

Finally, the defendants' assertion that the plaintiff will not be prejudiced by lifting the Default is manifestly incorrect. While the "delay caused by reopening a [default] does not itself constitute prejudice," the delay must not "'result in the loss of evidence, create increased difficulties of discovery, or *provide greater opportunity for fraud and collusion*.'" Bicicletas Windsor, S.A. v. Bicycle Corp. of America, 783 F. Supp. 781,

788 (S.D.N.Y. 1992) (quoting Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983))

(emphasis added).  Additional delays run the risk of "thwart[ing a] plaintiff's recovery"

by allowing the defendant "greater opportunity for fraud and collusion."  New York v.

Green, 420 F.3d 99, 110 (2d Cir. 2005).  "[T]his type of conduct cannot be condoned by

the court."  Titus v. Smith, 51 F.R.D. 224, 227 (E.D. Pa 1970).

Fraud and collusion are relevant concerns in this case because of the defendants'

illustrated inclination for deceit.  The defendants own several investment properties that

could be liquidated to satisfy the judgment in this case.  The defendants have shown a

propensity for brazen dishonesty, and there is little doubt that they will hide or divert

their assets while this litigation is pending.  In fact, the plaintiff has been advised that

Defendant Olawuni's possession and use of multiple names, Social Security Numbers,

and dates of birth indicates that he is already using fraudulent information to conceal his

assets.  (Ex. 4 at ¶ 9.)  If the court vacates the Default, it runs the risk of thwarting the

plaintiff's ability to recover a judgment against the defendants.  This danger is amplified

because the defendants' actions were excluded by the terms of their insurance policy.

Therefore, the defendants' personal assets will have to be secured in order to satisfy the

judgment.  Additional delay will only make these assets more difficult to find.

In summary, the defendants cannot establish that they are entitled to relief from the Default.  As such, the plaintiff respectfully requests that this Court deny the defendants' request to vacate the entry of Default.


Respectfully submitted,


    /s/Matthew F. Noone
MATTHEW F. NOONE
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
(215) 665-2192
(215) 701-2192  fax
mnoone@cozen.com

and

Eric N. Stravitz  (D.C. Bar #438093)
2000 Massachusetts Avenue
Suite 200
Washington, DC 20036
(202) 463-0303
(202) 861-8858 fax
strav@erols.com

Counsel for Plaintiff Federal Ins. Co.
a/s/o Denise Washington